Good morning, Your Honor. Nore Hirazawa, Federal Defenders, on behalf of Mr. Tinoco-Garcia, I would like to reserve two minutes for rebuttal. Fine. Go ahead. Mr. Tinoco-Garcia's removal proceedings violated his regulatory right to be advised that he could avoid removal by obtaining a state court order vacating his invalid conviction and seeking voluntary departure through a process analogous to the process in CJLG. This case is unique for three reasons. Mr. Tinoco-Garcia told the immigration judge that his lawyer had never advised him about the immigration consequences of his plea. Two, his lawyer confirmed before the district court that he did not provide competent advice. And three, an immigration lawyer concluded that Mr. Tinoco-Garcia could have successfully obtained post-conviction relief and an immigration-safe plea, a conclusion the government does not contest. On this record, it was apparent to the immigration judge that Mr. Tinoco-Garcia could avoid removal by vacating his one prior conviction and seeking voluntary departure, and the regulations required her to advise him of that relief. Further, the immigration judge's passing mention of a motion that Mr. Tinoco-Garcia could file in state court was not an adequate advisal because she did not connect that motion in Mr. Tinoco-Garcia in his removal proceedings. And further, she immediately undermined the purported advisal by saying that there was nothing that she could do in the removal proceedings themselves and that she could only deal with the information in front of her, which is that he had the conviction and it made him deportable. And additionally, she told him that it was very unlikely that he would be able to vacate the conviction before she ordered him deported. That was not a sufficient advisal. The reason this voluntary departure matters, as I understand it, is that if he had voluntary departure, he could have perhaps applied to Mexico or the visa, and without it, he was banned for life from ever coming back. Is that basically it? That is correct, Your Honor. Based on the aggravated felony... You didn't mention voluntary departure to him at all or the problem. He was, at one point, he had the impression that he could go back to Mexico and apply in Mexico, although he needed waivers. And then she found out, she realized that he was an aggravated felon. At that point, did she ever tell him that he couldn't do anything? No, she did not inform him that he was subject to a lifetime bar at that juncture or correct her original advice. Okay, go ahead. The relief that the immigration judge was required to advise Mr. Tinoco-Garcia of, that he could obtain a state court order vacating his conviction and then seek... But she sort of did tell him that, although she told him that he wasn't going to be able to... She told him that in the context, at the point at which she was telling him that he could go back to Mexico and apply anyway. So it wasn't about voluntary departure, but she did tell him that he might be able to do that, but it wouldn't be time. And she didn't say, but I could grant you a continuance if I felt like it, if I wanted to. Correct. The main defect with her advisal or her mention of the state court motion is that she, although she mentioned that he may very well have a motion he could file in state court, she never informed Mr. Tinoco-Garcia that that motion could actually remove a barrier to him seeking relief in immigration court and prevent his removal. So to Mr. Tinoco-Garcia... But didn't he... Excuse me. Didn't he say that he wanted to get out, he wanted to go back home, he didn't want to wait in custody, right? No, Your Honor. He did say that on several occasions. However, most of the quotes that the government has selected occur before the immigration judge ever mentioned that he had a motion that he could file in state court and before Mr. Tinoco-Garcia ever raised the issue of the Padilla violation on the record before the immigration judge. But she said that it would take a little time, right?  Correct? Correct, Your Honor. The immigration judge originally advised Mr. Tinoco-Garcia that if he wanted to apply for any sort of benefit withholding protection under the Convention Against Torture, that she would not have an opportunity for him to do that until June or July. And that was when he made the original statements about wanting to be out of custody. However, at the second hearing, he informed the judge again that his wife had a pending petition for him to become a lawful permanent resident, and again informed him, and I apologize, informed him for the first time about the Padilla violation. In that context, the only reference that Mr. Tinoco-Garcia made after the IJ mentioned any sort of state court motion was that he wanted to be out in Mexico, but based on his testimony at ER 219, he states, What I understood from the judge is that if I am removed to Mexico, my wife can still request me. However, the immigration judge never corrected her initial misadvisal that was grounded in her belief, her mistaken belief, that his conviction was not an aggravated felony. The fundamental problem, the fundamental problem is that she never told him why it mattered or that it mattered or that he could get voluntary departure and what it meant. That is correct, Your Honor. That is the fundamental problem. Well, his insistence that he wanted to go back to Mexico was always cabined with, so I can make some money and get a lawyer and come back. That is correct, Your Honor. His guiding goal throughout the proceedings was to be able to remain with his family in Sacramento and to be able to seek lawful status. When she told him in the third hearing that, oh, wait a minute, it is actually an aggravated felony, what did she say why that mattered? She said that it mattered because it rendered him ineligible for voluntary departure, and she previously told him that she would consider his application for voluntary departure. Let me ask you, I was just going to ask, what is your best case to show that this is close to that? Your Honor, I do think this relief is very similar to the relief an immigration judge must advise of in CJLG. SIJS relief is similar to the relief that Mr. Chinoco Garcia could have benefited from in that it is predicated on obtaining a state court order and then seeking a discretionary benefit before the immigration judge. What would be the limits of the rule you're proposing? So, for example, if a petitioner during the IJ says, I had a good alibi for my criminal conviction, my attorney never followed up on that. Would the IJ be unnoticed to tell the petitioner that he or she potentially has an effective assistance of counsel, which then could vacate the conviction? Your Honor, I have a little more than two minutes left. May I respond? Please do. This particular form of relief is based on Mr. Chinoco Garcia, his counsel's failure to advise him regarding immigration consequences of his plea, specifically under Padilla. That is specifically what landed him in removal proceedings, his attorney's failure to advise him of how this would derail his petition for a green card. Had he known about the immigration consequences as evidenced in his declaration to the district court, he never would have pled guilty and he would have taken his case to trial just so that he could preserve that benefit. I think that is meaningfully different from other forms of post-conviction relief or other collateral appeals of criminal convictions in that the violation, the constitutional violation during the criminal proceeding, is directly tethered to his subsequent placement in removal proceedings. And the swift and severe consequences that the Supreme Court has recognized may result from that. And so for that reason, I think that at minimum in this particular situation, where Mr. Chinoco Garcia made clear on the record a prima facie Padilla claim and specifically informed the immigration judge that he had no idea of the consequences, under these particular circumstances, the immigration judge was required to inform him of his eligibility for relief. Do you mind if I reserve your time? Yes, thank you, Your Honor. Mr. Hawley. May it please the court, Benjamin Hawley for the United States. Picking up on that last point, we expect immigration judges to be experts in immigration law. What we don't and shouldn't expect them to be is experts in post-conviction criminal procedures, which of course is a very difficult area of law on its own. Padilla is immigration law essentially. It seems to me that it's not too much to expect an immigration judge to know about Padilla. I agree as to Padilla. Yes, Padilla is essentially the best case for a defendant in this situation because it is immigration related. But how to overturn, how to vacate an otherwise final criminal conviction, even when it's Padilla-based, there are a lot of procedures involved in that. Now it appears that the defense is trying to cabin their request to just Padilla, though it's not clear to me how that rule would function. Anytime someone said, well, I pled guilty, but I've since learned there was other information that I didn't know at the time, Brady-type material, or there's a problem with jury selection, or any number of things that can lead to someone seeking to vacate or undo either a guilty verdict or a guilty plea, that would put the immigration judge to then have to advise them about that. It also starts down a long road of counterfactuals and hypotheticals. So, for example, in this case, we only have one conviction, and it was recent in time to the removal proceedings. But even if he were able to vacate the conviction, it's not as though it goes away entirely. He's just back at square one with state proceedings. Why do you think that this isn't parallel to CLGS? There are three primary differences to that case. The first is that, in that case, the necessary state proceeding was not seeking to overturn prior proceedings or to undo something the state had already validly imposed, in that case, a guilty plea and sentence. And so, in that case, it was just a determination of custodial status. It wasn't litigation. It was still going to take time, and it was still a state court proceeding, and it's still going to come at an even way, and it's still going to require a continuance, which the opinion specifically notes. Yes, and I agree with that. It just seems that it's a different, qualitatively different thing to undo something that's already been done as opposed to seek a declaratory order in the first instance. And in terms of that continuance, which you pointed out, the court there said, most importantly, the IJ could have granted that continuance, and CLG was actively pursuing that state court order. That's not what we have here. Mr. Chinoco-Garcia did not pursue it at the time, even when the IJ said, I can set this over for a couple weeks, right after she told him about the motion. She never pulled the pieces together because she didn't realize until the third hearing about the aggravated felony. So when he said, you know, I really want to leave. I want to go back to Mexico and, you know, apply and get these waivers. She didn't say, but wait, you can't do that because, in fact, she didn't even know he couldn't do that at that point. And then when she did know it, she said, you're not eligible for voluntary departure. But what does that mean to somebody who doesn't know any immigration law? He had no idea that that was connected up to his other problem, which is the Padilla problem. He just didn't know it. It wouldn't have taken a whole lot to explain to him that he's going to be barred for life from coming back to the United States unless he does something about this conviction, which he can do. So she did say right after she said, you may have this motion. I can set it over if you would like. That's when he then said, well, you know, my understanding was I could petition from Mexico. She then says that's going to be very difficult based on this conviction. This conviction, I just told you, you can move. It's possible. No, that's true. It's impossible. Right. And then at the third hearing, she says aggravated felony. And I agree. It's impossible. I agree. She did not say it was impossible. She did say it's going to be very difficult, given your conviction. The one I just said, you could try to vacate. And again, his his procedure, his interest the entire time was he did not want the continuance. He just wanted to be out as soon as possible so that he could make money and find a lawyer and come back. And the problem was she misadvised him. I mean, isn't that she didn't advise him. She essentially misadvised him because she told him that it was at least a possibility and it isn't a possibility. So, I mean, I agree with what you're saying that she never said this will be impossible. However, she made it clear that it's all but impossible. I don't remember the exact phrasing she used, but it's very unlikely that you'll be able to get this. And again, this is right after she said we can continue this. The reason these proceedings were so close together. There was a two week continuance and then essentially continuance over a weekend. It's because it's Mr. Chinoco Garcia who kept asking to go faster. She offered twice in the first hearing, again in the second hearing. Let's get we can get you an attorney. Do you want an attorney? No. He just wanted to accept the order. He said the first time I would rather be out in Mexico, as the court noted, so that he wanted to fight the case from there. There's no evidence that he did that. The record doesn't reflect. But as it turned out, right. I'm sorry. There was nothing he could have done at that point. In fact, once it turned out that it was an aggravated felony, which he didn't realize. So she misadvised him and he didn't have voluntary departure because she didn't tell him that unless he vacates the conviction, he's not going to have any relief at all. Right. As the words voluntary departure, but she didn't tell him what it meant. I agree with that. What I what I meant was that he hasn't done anything as to the state side of the conviction once he was removed. Or as far as I know, in the record shows since then, instead, he came back and was only once being charged. He was doubly. I understand that he shouldn't have come back, but what was he supposed to do? So at that point, he could have tried to. Is that correct? Nothing. He could have tried to attack the underlying criminal conviction, as he could have done at the time. He had that option. And as far as I know, still has that option. I don't know the state procedure in terms of timing. But of course, he still had a voluntary departure. So if he were able to undo to vacate the state conviction and again, assuming he then found out guilty or pleased to something that's different than what he pled to, then you might have other options in terms of being able to get those waivers or to. I mean, he would not have an aggravated felony at that point, assuming he can vacate the plea and not plead to. It wouldn't matter that he didn't have voluntary departure. My understanding is he was looking not only for voluntary departure at the removal hearing, but ultimately he was trying to get status by his wife. And the aggravated felony is the main thing that stood in the way of that status. Even though he was, in fact, deported, he could have and didn't have voluntary departure. And that is part of the problem is that depending on exactly what happened with the state side, there are so many branching possibilities of what could happen. This kind of goes to that first point that our position, the adviser is not required at all. It's because then an immigration judge is going to have to advise about, well, if you're found not guilty, then voluntary departure is an option. If you plead to a crime involving moral turpitude, not an aggravated felony, that changes things. If you plead to a felony, neither. Yes, sir. I have a question. Is it your position that the immigration judge was not supposed to give him any advice about this or that the advice she gave him was satisfactory under law? The latter. The judge doesn't have to give an advisal, but there's no rule that the judge couldn't give the advisal. So our position is she didn't have to, but she did. And that advisal was sufficient. And the reason that she doesn't have to is because the regulations require that IJs give advice about or inform them about apparent eligibility for benefits enumerated in this chapter. And our position is there's just too many steps between an otherwise final criminal conviction and the benefits enumerated in the immigration regulations to justify the action. On that point, CLGS is different. One reason was because it was undoing something. What are the other reasons? Yes. So the first was exactly as you said, that it's different to undo something as opposed to get that declared for a family law custodial status. Second was the court emphasizing that most importantly, the IJ could have granted continuance. CJLG was actively pursuing it, which is different than what we have here. Yes. And the IJ here offered that continuance immediately after she said, you may have this motion. Do you want me to set it over a couple of weeks for you to seek out an attorney? And the third reason is more of an equity than a specific distinction, but that CJLG was primarily focused on the fact that the alien was a minor. And so, of course, that's going to lead to different equities than you have here, where he's he's an adult. He was offered again multiple times to get that attorney declined, was not actively pursuing post-conviction relief. And so I see my time's up. So unless the court has any questions. Thank you. Thank you, Your Honor. CJLG is actually quite analogous. And the court specifically rejected the government's argument there that an individual or respondent had to seek a state court order and obtain an I360 from USCIS prior to the advisal being triggered. Instead, the court found that the immigration judge was required to advise the juvenile respondent about SJS relief where there's any apparent eligibility. And so the mention of a lack of contact with his father was a sufficient trigger for the immigration judge in that case. Here, the trigger was much more clear. Mr. Tinoco-Garcia set forth a prima facie Padilla case before the immigration judge, and that clearly triggered IJ's responsibility to advise him of relief. I would also just briefly note that the government cites only one case, not from the circuit, in support of its claim that Mr. Tinoco-Garcia could not collaterally attack the prior conviction based on Padilla during the 1326 proceedings. And that case is Adame Orozco. And I just want to briefly mention the reasons that is different. In that case, the court only addressed 1326D2, not the fundamental unfairness of the proceedings. Additionally, that case was pre-Padilla, and the immigration judge did advise regarding post-conviction relief in that case. And as with the bulk of the authority on post-conviction relief and removal proceedings, the issue really hinged on whether the immigration judge granted sufficient continuances, not whether there was a duty to advise. I'm not arguing that the immigration judge needed to grant sufficient continuances for Mr. Tinoco-Garcia to actually obtain post-conviction relief. That would remain in the discretion of the immigration judge. But at minimum, she was required to advise him that this was an avenue of relief available to him. And that he needed it. And that he needed it. Correct. That in light of his priorities set forth on the record, in light of the fact that he mentioned that he had an approved I-130 that his wife had filed, that his U.S. citizen wife, U.S. citizen children all lived in Sacramento, and that he repeatedly mentioned that his goal was to continue pursuing that application, the immigration judge was required to advise him that this would have... One last question. Is Mr. Hawley right that if he got the conviction, Mr. Tinoco-Garcia still could apply for the relief? Yes, Your Honor. Yes, Your Honor. As Mr. Hawley noted, he could still potentially obtain some sort of lawful status if he is able to vacate the aggravated felony conviction. However, now that he has been ordered removed, rather than granted voluntary departure, it complicates things significantly. Because he would have to seek a motion to reopen his immigration case, which of course is a matter of discretion and is not always granted. And so that is... there would be additional steps that he would need to take beyond simply vacating the conviction and seeking voluntary departure, which is what was available to him at the time of removal. Okay. Thank you very much, both of you. United States v. Tinoco-Garcia has been submitted. And we will go to the next case, United States v. Garcia.
judges: Siler, Berzon, Lee